**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                  No. 98-4508

NATHANIEL D. CLAPP,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Raymond A. Jackson, District Judge.
(CR-98-7)

Submitted: February 26, 1999

Decided: June 4, 1999

Before WIDENER, LUTTIG, and TRAXLER, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Jennifer T. Stanton, J.T. STANTON, P.C., Norfolk, Virginia, for
Appellant. Helen F. Fahey, United States Attorney, Darryl J. Mitchell,
Special Assistant United States Attorney, Norfolk, Virginia, for
Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

**OPINION**

PER CURIAM:

Nathaniel Clapp was convicted by a jury of being a felon in possession of a firearm, 18 U.S.C.A. § 922(g)(1) (West Supp. 1998), and possession of a firearm with an obliterated serial number, 18 U.S.C.A. § 922(k) (West Supp. 1998). He appeals his conviction and eighty-four-month sentence, contesting the district court's denial of his suppression motion and its calculation of his criminal history score. See U.S. Sentencing Guidelines Manual §§ 4A1.1-4A1.2 (1997). We affirm.

I.

Clapp was arrested on July 3, 1997, after he was found in possession of a 9 mm pistol with an obliterated serial number outside an apartment complex in an area known to be an open air drug market. Clapp sought to suppress the pistol, alleging that he was stopped by police in violation of the Fourth Amendment and did not consent to have the police officer search his pockets.

Norfolk Police Officer Paul Donnelly testified at the suppression hearing that he was in a three-to-four-man bicycle patrol which entered the complex during the day on July 3, 1997. As they came in, they saw Clapp standing by himself in a grassy area. Clapp appeared to react to the sight of the officers by furtive movements--pulling his hand out of his pocket, putting it back, and turning away. Because the apartment owners were concerned about trespassers involved in drug dealing, all four officers rode over to Clapp.

Donnelly testified that he asked Clapp whether he lived at the complex and that Clapp said his mother lived there. However, he said it was police policy to verify assurances that someone was visiting a resident as such claims were often untrue. Donnelly said he noticed a large bulge in Clapp's pants pocket and asked what it was. When Clapp did not answer, Donnelly testified that he asked, "Do you mind if I look?" He said that Clapp responded, "Yeah, okay," pulled some items out of pockets, and held them up. Donnelly then pointed to the

2

bulge, which was still there, asked what it was, poked or patted it, and recognized that it was a gun. He retrieved the gun.

At this point, Donnelly said Clapp was handcuffed and, while it was being done, he recognized Clapp, who had been pointed out to him as a drug dealer years before. Donnelly said he knew that Clapp had been banned from the apartment complex. Donnelly had attempted to catch Clapp with drugs on him several times but had failed. Clapp was arrested and charged with being a felon in possession of a firearm and possession of a firearm with an obliterated serial number.

Clapp did not testify at the suppression hearing. Under cross-examination, when confronted with his offense report, Donnelly agreed that Clapp's arrest took place during the late evening, not during the day as he had previously testified. When asked whether Clapp had provided any identification, Donnelly testified that he had not, but that he recognized Clapp as a known drug dealer whom he had chased several times.

Clapp's attorney then presented testimony from Marc McMillin, the attorney who represented Clapp at his preliminary hearing in state court on July 22, 1997. McMillin testified about his recollection of Donnelly's testimony. His memory of what Donnelly testified differed from Donnelly's testimony at the suppression hearing in two respects. McMillin said Donnelly testified at the preliminary hearing that Clapp provided a valid identification before the gun was discovered, and that Donnelly testified that he reached into Clapp's pocket without mentioning that he first touched the outside of the pocket to determine that the bulge felt like a pistol. McMillin had taken notes during the hearing. Both his notes and Donnelly's offense report were admitted into evidence. Donnelly's report stated that he had touched Clapp's pocket before he reached into it and that he recognized Clapp after he retrieved the gun.

The district court denied the motion to suppress, finding that Clapp had consented to a search of his pockets and that Donnelly made a legitimate stop and frisk under Terry v. Ohio , 392 U.S. 1 (1968). The court found that Donnelly patted Clapp's pocket before reaching into it. The district court's factual determinations on suppression issues are

3

reviewed under the clearly erroneous standard and its legal conclusions are reviewed de novo. See United States v. Rusher, 966 F.2d 868, 873 (4th Cir. 1992). Here, Clapp did not testify at the hearing and his attempt to impeach Donnelly's testimony did not seriously undercut Donnelly's story because most of what Donnelly testified about was confirmed by his incident report. Therefore, to the extent that the district court accepted Donnelly's version of events, the court did not clearly err.

Clapp argues that he was seized when the four police officers confronted him and that they had no reason to detain him because it was not clear that he was trespassing. He also contends that the frisk was unjustified in that Donnelly had no reason to fear for his safety despite the visible bulge in Clapp's pocket because Donnelly did not testify that he was concerned about firearms.

We find that the district court did not err in denying Clapp's motion to suppress. First, Clapp was not seized when the police approached him and asked him whether he lived at the apartment complex. See Florida v. Bostick, 501 U.S. 429, 434 (1991) (mere questioning by the police does not constitute a seizure).

Moreover, the district court found that Clapp consented to a search of his pockets. This finding was not clearly erroneous because it was supported by Donnelly's undisputed testimony that Clapp said "Okay," and began displaying the contents of his pockets in response to Donnelly's request to search. There was no evidence that Clapp limited the scope of the search. Therefore, no Fourth Amendment violation occurred when Donnelly reached into Clapp's pocket, whether Donnelly touched the outside of the pocket first or not.

Last, Donnelly had justification for a protective search once Clapp pulled several items out of his pockets leaving the bulge still visible. Police may "stop and briefly detain a person for investigative purposes," if they have "a reasonable suspicion supported by articulable facts that criminal activity `may be afoot.'" United States v. Sokolow, 490 U.S. 1, 7 (1989); see also United States v. Swann, 149 F.3d 271, 274 (4th Cir. 1998). An officer may conduct a patdown search of the detainee's outer clothing if there is "reason to believe that he is dealing with an armed and dangerous individual." Terry, 392 U.S. at 27.

4

A suspicious bulge under a suspect's clothing may provide a basis for a protective search. See United States v. Baker , 78 F.3d 135, 137 (4th Cir. 1996).

Donnelly testified that Clapp made furtive movements when he saw the police, put his hands in and out of his pockets, and turned away. In an area notorious for drug-dealing by non-residents, such behavior inevitably aroused concern. Clapp's statement that his mother lived at the complex did not completely dispel suspicion that he was trespassing. Moreover, once Clapp agreed to show Donnelly what was in his pockets and withdrew several items, leaving the object causing the bulge still hidden, Donnelly could reasonably suspect that it was a firearm. Thus, he had cause for a patdown frisk. When he felt the hard object, he knew it was a firearm and was justified in removing it. See Baker, 78 F.3d at 138 (citing Adams v. Williams, 407 U.S. 143, 147-48 (1972) (officer acted reasonably in reaching directly for firearm in waistband of suspect's pants)).

II.

At the sentencing hearing, Clapp objected to criminal history points recommended in the presentence report for a number of his prior sentences. The contested offenses which are relevant on appeal are the following: (1) disorderly conduct, suspended 30-day sentence and fine imposed 11/22/93; (2) assault and trespassing, time-served sentence and 12-month suspended sentence imposed 12/14/94; (3) driving under revocation or suspension, 6-month sentence with 5 months and 20 days suspended and fine imposed 11/6/96; (4) trespassing, 60-day suspended sentence and fine imposed 1/9/97; (5) driving under revocation or suspension, 30-day sentence with 28 days suspended imposed 4/1/97.

Clapp argued that all but the assault were offenses which are not counted unless the sentence was a term of probation of at least one year or a term of imprisonment of at least thirty days. See USSG § 4A1.2(c)(1). Clapp had received suspended sentences for each offense except the assault. No term of probation was imposed with any of the suspended sentences, and the time he served in prison was less than thirty days. However, the district court overruled his objections, finding that, under Virginia law, a suspended sentence with no

5

period of probation includes an implied period of good behavior extending as far as the maximum period for which the defendant might originally have been sentenced. Because all the contested offenses were Class I misdemeanors, the maximum sentence was one year. See Va. Code Ann. § 18.2-11 (Michie 1996). Therefore, the district court found that the contested offenses were countable under USSG § 4A1.2(c)(1).

The district court revised the calculation for the assault and trespassing offenses. For the assault sentence of ninety days, reduced to an unspecified time served, for which the probation officer had recommended two points, the district court gave one point. For the trespassing sentence of twelve months in jail, suspended upon two years good behavior, for which the probation officer had recommended no points, the district court awarded one point. Clapp's revised criminal history score was eleven points, placing him in category V, and giving him a guideline range of 77-96 months. The court imposed a sentence of eighty-four months.

On appeal, Clapp disputes the district court's determination that points should be awarded for the suspended sentences. He also contends that the district court committed plain error in awarding one point each for the assault and trespassing sentences imposed on December 14, 1994, because they were related cases. Finally, he claims that he received more than the four-point limit for sentences counted under USSG § 4A1.1(c).

The first issue is whether Virginia law provides for an automatic period of probation of at least one year when a suspended sentence is imposed and no period of probation is specified. If so, then the district court was correct in awarding Clapp one criminal history point for each such sentence he received or the fines associated with most of them. Otherwise, the sentences and fines should not have been counted at all under USSG § 4A1.2(c)(1). Clapp argues that no such implied probationary period exists. He relies on the two relevant Virginia statutes and a decision from the Virginia Court of Appeals interpreting them.

Section 19.2-303 of the Code of Virginia provides in pertinent part:

6

> After conviction . . . the court may suspend imposition of sentence or suspend the sentence in whole or part and in addition may place the accused on probation under such conditions as the court shall determine . . . .
>
> If a person has been sentenced to jail upon conviction of a misdemeanor or a felony, the court may, at any time before the sentence has been completely served, suspend the unserved portion of any such sentence, place the person on probation for such time as the court shall determine, or otherwise modify the sentence imposed.

Va. Code Ann. (Michie 1995).

Section 19.2-306 provides in pertinent part:

> The court may, for any cause deemed by it sufficient which occurred at any time within the probation period, or if none, within the period of suspension fixed by the court, or _if neither, within the maximum period for which the defendant might originally have been sentenced to be imprisoned,_ revoke the suspension of sentence and any probation, if the defendant be on probation, and cause the defendant to be arrested and brought before the court at any time within one year after the probation period, or if no probation period has been prescribed then within one year after the period of suspension fixed by the court, or if neither a probation period nor a period of suspension has been prescribed then within one year after the maximum period for which the defendant might originally have been sentenced to be imprisoned, whereupon, in case the imposition of sentence has been suspended, the court may pronounce whatever sentence might have been originally imposed.

Va. Code Ann. (Michie 1995) (emphasis added).

For each prior offense where Clapp received a suspended sentence, the court imposed sentence but failed to impose either a period of probation or to fix a time when the period of suspension would end. Con-

7

sequently, under § 19.2-306, each of Clapp's suspended sentences was subject to revocation within the maximum period for which he might originally have been sentenced to imprisonment. Because the offenses were all Class I misdemeanors, the maximum sentence for each was one year. See Va. Code Ann. § 18.2-11.

Clapp's argument concedes all of the above. But he asserts that the "maximum period for which [he] might have been sentenced to be imprisoned" was no more than the length of the sentence imposed and then suspended. So he claims that the thirty-day suspended sentence imposed for disorderly conduct on May 9, 1994, could have been revoked only for violations committed within the thirty days after he was sentenced. Therefore, in his view, he was not subject to an implied period of probation lasting one year and the offense was not countable as part of his criminal history under§ 4A1.2(c)(1).

Clapp relies on Carbaugh v. Commonwealth, 449 S.E.2d 264 (Va. Ct. App. 1994). However, Carbaugh does not support his position. In that case, the defendant received a suspended four-year sentence for arson, a two-year suspended sentence for grand larceny, five years imprisonment for other offenses, and a six-year term of probation. No period of suspension was fixed. When Carbaugh was arrested for driving under the influence of alcohol after the period of probation expired, the court revoked nine months of the suspended sentence for grand larceny. The Virginia Court of Appeals held:

> Although the express wording of the statute does not explicitly address a judge's power to revoke suspension . . . when no period of suspension was fixed, that power is implicit because, if the cause arose during a time that was[not] . . . within a period of suspension (i.e., no period of suspension was expressly prescribed), the judge could revoke the suspended sentence . . . "within the maximum period for which the defendant might originally have been sentenced to be imprisoned."

Carbaugh, 449 S.E.2d at 267-68 (quoting Va. Code Ann. § 19.2-306).

Because the grand larceny conviction carried a maximum sentence of twenty years, the court held that Carbaugh's suspended sentence

8

could be revoked at any time during the twenty years following his original sentencing. See Carbaugh, 449 S.E.2d at 268. Under Carbaugh, Clapp's suspended sentences for Class I misdemeanors could have been revoked up to one year after sentence was imposed. Therefore, the district court did not err in counting them in Clapp's criminal history score.

Clapp next contends that the district court correctly awarded him one criminal history point for the "time served" sentence he received for assault on a police officer, but erred in giving him one criminal history point for the trespassing sentence which was imposed the same day in the same court. He claims that both offenses were part of a common scheme or plan and thus were related cases which should have been treated as one sentence. See USSG § 4A1.2(a)(2) & comment. (n.3). Because Clapp did not object to the district court's decision at sentencing (see JA-I at 75), the issue is reviewed for plain error. See United States v. Olano, 507 U.S. 725, 732 (1993) (plain error is one which is obvious and prejudicial).

While the cases may have been related and the court may have erred in giving Clapp a point for each sentence, the extra point did not prejudice him. Clapp's final total was eleven criminal history points, which placed him in category V (10-12 points). Deleting one point would not affect the criminal history category or lower Clapp's guideline range. Therefore, Clapp has not shown plain error.

Last, Clapp maintains that, if the district court was otherwise correct in calculating his sentence, it erred in giving him a point for this sentence because no more than four points are permitted under § 4A1.1(c). Although the four-point limit was not discussed at sentencing, the probation officer's final calculation deleted the point initially given for this sentence. No error occurred.

Accordingly, we affirm the conviction and the sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

9